UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x

WE BUY, INC.,                                      :
                                                   :
                            Plaintiff,             :
                                                   :
              v.                                   :          **<u>OPINION</u>**
                                                   :
TOWN OF CLARKSTOWN STATE OF NEW YORK,  :          06 Civ. 1794 (LBS)
TOWN OF CLARKSTOWN POLICE DEPARTMENT, :
DETECTIVE EARL LORENCE, and PETER       :
NOONAN, Chief of Police,                           :
                                                   :
                            Defendants.             :

-------------------------------------------------------------------x

Appearances:

*Plaintiff*

Paul Joseph Solda
Law Office of Paul Joseph Solda
Empire State Building
350 Fifth Avenue, Suite 2418
New York, NY 10118

*Defendants*

Harold Y. MacCartney, Jr.
MacCartney, MacCartney, Kerrigan & MacCartney
13 North Broadway
P.O. Box 350
Nyack, NY 10965

SAND, J.,

This is not a high stakes case.  It stems from the warrantless seizure of a gold bangle bracelet worth less than $500 from a pawnshop.  The plaintiff is not being prosecuted or even investigated.  None of plaintiff's employees were arrested.  The bracelet remains in police custody.  But the issues this case presents are difficult and important.  We Buy, a pawnshop, sued the Town of Clarkstown, the Clarkstown Police Department, Detective Earl Lorence, and Police Chief Peter Noonan under 42 U.S.C. § 1983 for violations of its civil rights stemming from the warrantless seizure of a bracelet from one of its stores in the Bronx, New York.  Before the Court is the defendants' motion for summary judgment.

I

Under Federal Rule of Civil Procedure 56(c), a court may grant summary judgment only where "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  When considering a motion for summary judgment, the court must view the facts in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor.  Anderson v. Liberty Lobby, 477 U.S. 242, 255 (1986).  Taking the facts in the light most favorable to the plaintiff, the dispute arises out of the following sequence of events.

On Friday, February 24, 2006 a group of eight to ten police officers from the Town of Ramapo Police Department, the NYPD, and the Town of Clarkstown Police Department[1] entered the public area of a second-hand store and pawnshop in the Bronx owned by We Buy.  The upstate police officers were investigating a recent string of burglaries.  The officers told Andre

---

[1] The defendants contend that no Clarkstown police officers were present on February 24, but, as this fact is immaterial, for the purposes of this motion the Court will assume that Detective Lorence was present on that day and spoke with Dambrot.

Santiago, the We Buy employee behind the counter, that they "wanted to see the pawn ledger" and the "book" relating to transactions "in the past two weeks." (Pl.'s Rule 56.1 Statement ¶¶ 49-50, 54.) Under the impression that the police were conducting an administrative inspection, Santiago produced the ledger and book, saying "no problem." (Id. ¶¶ 53, 55.) After looking at the records, the police asked to see a bracelet that was purchased from Dennis Young, a suspect in the upstate burglaries. Santiago telephoned Harold Dambrot, the Vice President of We Buy, and handed the phone to the officers. After speaking with Detective Lorence, Dambrot consented to allow the officers to see and photograph the bracelet "in the spirit of cooperation" and to photocopy the records relating to the transaction. (Id. ¶¶ 59-60, 66.) Dambrot told the police on the phone that the bracelet would be flagged, put on thirty-day police hold, stored in a separate part of the safe, and not put on display. He also told the police that if they came back to seize the bracelet, they would need a warrant. (Id. ¶ 64.) Plaintiff has admitted that by the time Dambrot consented to allow the police to see and photograph the bracelet, both Dambrot and Santiago were aware that the police were conducting a criminal investigation, not an administrative inspection. (See Oral Arg. Tr. 17-18.) Santiago retrieved the bracelet from the safe and the officers photographed it. Then Santiago put it back in the safe and the officers left.

Later that day, the police showed the photograph to the victim of a burglary in Clarkstown. The victim identified the bracelet as property that had been stolen from her in the burglary. On Saturday, February 25, 2006, Detective Lorence was advised that the victim had identified the bracelet from the photograph.

On Monday, February 27, 2006, Detective Lorence and approximately eight officers from Clarkstown, Ramapo, and NYPD returned to the store without a warrant to take the bracelet as evidence. Santiago recognized the officers and asked if they had a warrant. Lorence replied that

he did not, but showed Santiago the photograph that was taken on Friday and said that the bracelet had been identified as stolen property and he was there to pick it up.  Santiago telephoned Dambrot, told him that the police were back to pick up the bracelet, and put him on the phone with Lorence.  Dambrot told Lorence that he could not take the bracelet without a warrant; it was on hold and secured, so there were no exigent circumstances.  (Pl.'s Rule 56.1 Statement ¶ 87.)  Lorence told Dambrot that "Clarkstown doesn't use or need warrants and that they make numerous seizures during investigations based on identifications by victims." (Dambrot Aff. ¶ 5.)  Lorence then told Dambrot that they "weren't getting anywhere" and hung up the phone.  (Pl.'s Rule 56.1 Statement ¶ 87.)

The officers talked among themselves for a few moments and then one of the officers[2] said, "If they want a warrant, we will get one, but nobody is coming in or out of this establishment until we get one."  (Id. ¶¶ 91, 93.)  Another officer said that they would close the place down and place Santiago under arrest for possession of stolen property if he did not turn over the bracelet.  (Id. ¶¶ 89-92.)  Santiago again telephoned Dambrot and told him the situation. Dambrot told Santiago to "hand it over" and get a receipt.  (Id. ¶ 96.)  Santiago went into the back and retrieved the bracelet from the safe.[3]  He took it out of the bag it was in and handed it to Lorence who gave him a receipt.  (Id. ¶¶ 97-99.)  Santiago also gave the police copies of the paperwork relating to the transaction involving the bracelet.  There is no allegation that Santiago was ever arrested or handcuffed or that the store was closed.  The bracelet remains in police custody.

---

[2] Defendants contend that this officer was Sergeant Ronald Bolte of the NYPD.
[3] Defendants maintain that Santiago recognized the officers when they walked in the door and, once he confirmed that they were there about the bracelet, went into the back, got the bracelet, and placed it on the counter in plain view.  Only after Lorence spoke to Dambrot on the phone was the bracelet placed back in the safe.  For the purposes of this summary judgment motion, the Court assumes the facts are as plaintiff states them.

II

In a case where defendants claim qualified immunity courts must apply the two-step test set forth in <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001).  <u>See</u> <u>Velez v. Levy</u>, 401 F.3d 75, 84 (2d Cir. 2005).  First the court must determine whether there has been a constitutional violation.  If there has, then the court must determine whether the right was clearly established at the time of the violation.  <u>See</u> <u>Saucier</u>, 533 U.S. at 201.[4]  Plaintiff points to two potential constitutional violations that would give rise to liability under § 1983:  the warrantless search of the We Buy's records on Friday and the warrantless seizure of the bracelet on Monday.

A.  Warrantless Search of Records

Plaintiff alleges that the police violated its constitutional right to be free of unreasonable searches by examining We Buy's records under the pretext that they were conducting an administrative inspection when, in fact, they were conducting a criminal investigation.  It is important to note what is not at issue in this case.  As plaintiff admitted at oral arguments, once the police had focused their inquiry on the transaction with Dennis Young and asked to see the merchandise involved, Santiago was no longer under any impression that the police were conducting an administrative inspection.  We Buy's cooperation from that point forward, including producing the bracelet, allowing it to be photographed, and providing the police with copies of the records, was undertaken with the full knowledge of both Dambrot and Santiago that the police were conducting a criminal investigation.  The only constitutional violation that

---

[4] Although there has been criticism of this procedure, <u>see, e.g.</u>, Pierre N. Leval, <u>Judging Under the Constitution:</u> <u>Dicta About Dicta</u>, 81 N.Y.U. L. Rev. 1249, 1275-81 (2006), and it has sometimes not been followed in this circuit, <u>see, e.g.</u>, <u>Vives v. City of New York</u>, 405 F.3d 115, 118 n.7 (2d Cir. 2004), we believe it to be appropriate in this case to follow the Supreme Court's direction.

plaintiff alleges occurred on Friday, February 24 is the initial examination of the records under the pretext that it was an administrative inspection.

While Santiago agreed to allow the police officers to inspect the records, replying "no problem" to their requests to see them, We Buy argues that Santiago's consent was not valid. Essentially We Buy argues that because the police led Santiago to believe that they were conducting an administrative search, his consent to show them the records was not voluntary. He was merely acceding to a claim of lawful authority.  See Bumper v. North Carolina, 391 U.S. 543 (1968) (consent to search invalid where police falsely claimed that they had a search warrant).  Plaintiffs claim that if Santiago had known that the police were conducting a criminal investigation, he would not have consented.  Whether consent is voluntary under all the circumstances is a question of fact.  See Schneckloth v. Bustamonte, 412 U.S. 218, 227 (1973). If defendants rely on Santiago's consent to justify the inspection of the records, summary judgment must be denied and the question of whether Santiago's consent was voluntary or merely an acquiescence to a claim of lawful authority by the police, acting pretextually, must go to the factfinder.

However, it is by no means clear that the police cannot constitutionally use an administrative inspection to uncover evidence of criminality.  Plaintiff cites no authority for the proposition that an administrative inspection "must be for a purpose related to the regulation of business and not for the purpose of discovering evidence of criminality." (Pl.'s Br. at 7.)

The Tenth Circuit has held that "an administrative search may not be used as a pretext solely to gather evidence of criminal activity."  United States v. Johnson, 994 F.2d 740 (10th Cir. 1993).  In Johnson, a federal agent was investigating a taxidermist on federal smuggling charges.  He enlisted the help of state agents to conduct a regulatory inspection of the taxidermist

pursuant to a state statute that allowed such inspections if conducted by state agents.  Id. at 743.

The federal agent drove 300 miles to accompany the state agents in the inspection and actively

participated in a search that exceeded the normal scope of regulatory taxidermy inspections.  Id.

The court held that the federal agent could not use the state administrative inspection as a pretext

for a criminal investigative search.  Id. at 743-44.

The Tenth Circuit's holding in Johnson, however, is in tension with the Supreme Court's

holding in New York v. Burger, 482 U.S. 691 (1987).  In Burger, police conducted a warrantless

inspection of an automobile junkyard pursuant to a statute that required junkyard owners to keep

a "police book" recording information about all of the vehicles and parts on the premises.

Although the junkyard operator admitted that he lacked the license and records required by the

statute, the police searched the yard and discovered several stolen vehicles.  The Supreme Court

upheld the statutory scheme against a challenge that it violated the Fourth Amendment by

authorizing "searches undertaken solely to uncover evidence of criminality and not to enforce a

comprehensive regulatory scheme."  People v. Burger, 493 N.E.2d 926 (N.Y. 1986), rev'd sub

nom. New York v. Burger, 482 U.S. 691 (1987).  The Court reasoned "that a State can address a

major social problem *both* by way of an administrative scheme *and* through penal sanctions."

Burger, 482 U.S. at 712 (emphasis in original).  Burger's federal constitutional rights were not

offended by the use of an administrative inspection to uncover evidence of criminality.

In a footnote, the Court noted that there was no reason to believe that the particular

inspection in Burger was actually a pretext for obtaining evidence of criminal violations.  Id. at

716 n.27.  But, as the dissent points out, the state could not explain why Burger's operation was

selected for inspection in that instance, id. at 723 (Brennan, J., dissenting), and the police

continued to search the premises for stolen vehicles even after it was clear that Burger had

violated every possible provision of the administrative regulations by not having a license or police book.  Id. at 725-26.  The police even took down serial numbers of a wheelchair and walker that were not subject to any regulation.  Id. at 725 & n.12.  The majority, however, held that the administrative scheme need not cabin the police's discretion in conducting administrative inspections by requiring some showing of reasonable belief that they would find an administrative violation or even by requiring the police to conduct the inspections on a set routine or random basis.  Id. at 710-12 (majority opinion); id. at 723-24 (Brennan, J., dissenting) (pointing out that the scheme upheld by majority does not provide any standards to guide inspectors in selection of premises).  The majority also held that the continued inspection of the vehicles, even when there were no administrative provisions left to violate, was valid because uncovering evidence of stolen vehicles furthered the goals of the administrative scheme to ensure that vehicle dismantlers were legitimate businesspersons and prevent stolen vehicles and parts from passing through their hands.  Id. at 714, 716.

We Buy does not quarrel with the constitutionality of the administrative scheme, nor does plaintiff claim that pawnshops are not a "closely regulated industry."  Plaintiff merely claims that its constitutional rights were violated when the police performed what would constitute a valid administrative inspection, with the true motive of investigating a crime, not simply ensuring compliance with the administrative scheme.  Relying on Supreme Court cases like Horton v. California, 496 U.S. 128 (1990) ("plain view" seizures need not be inadvertent; officer's subjective hope to find evidence is irrelevant) and Wren v. United States, 517 U.S. 806, 813 (1996) (constitutional reasonableness of traffic stop does not depend on subjective motivations of individual officer), the Ninth Circuit has noted that "if the scheme under which the administrative search is conducted is constitutional, the subjective motivation of the individual

conducting the search will not invalidate the search."  United States v. Bulacan, 156 F.3d 963, 976 (9th Cir. 1998) (reaching question of constitutionality of scheme even though officer admitted having criminal investigatory purpose); see also United States v. Bowhay, 992 F.2d 229, 231 (9th Cir. 1993) ("When the police conduct [of an inventory search] would have been the same regardless of officer's subjective state of mind, no purpose is served by attempting to tease out the officer's 'true' motivation.").  In Burger, the Court relied on the substantial overlap between the purposes of the administrative scheme and the penal law to validate the administrative search.  Just as regulation of the business of automobile junkyards was intended to prevent traffic in stolen cars, regulation of the second-hand industry is intended to prevent traffic in stolen property.  See Burger, 482 U.S. at 706-07 & nn.17-18 (noting similarities between regulation of automobile junkyards and second-hand dealers).

This Court is of the opinion that We Buy's case is more closely analogous to the situation in Burger than in Johnson.  The actions of the police on Friday were even more restrained than the police in Burger.  They obtained consent (even if, as we assume, it was merely acquiescence to a claim of lawful authority) to review We Buy's records.  Unlike the federal agent in Johnson, they were entitled to access to the records under the administrative scheme regulating the second hand dealer industry.  When they discovered evidence of criminality, they obtained consent to investigate further under no claim of administrative authority.  As in Burger the investigation they were pursuing was directly related to the goals of the administrative scheme.  See 482 U.S. at 713-14.  The only Fourth Amendment violation that We Buy alleges is that the police examined its records.  It is, however, difficult to see how We Buy could have a reasonable expectation of privacy in those records protected by the Fourth Amendment when they were subject to inspection by the police at any time under the administrative scheme. Cf. Katz v.

United States, 389 U.S. 347, 361 (1967) (Harlan, J., concurring) (Fourth Amendment applies when an individual has an actual expectation of privacy "that society is prepared to recognize as 'reasonable'").  Therefore, even if Santiago's consent was not valid, We Buy's federally protected rights were not violated when the police reviewed the records.

Plaintiff also relies on People v. Keta, 79 N.Y.2d 474, 491 (1992), in which the New York Court of Appeals revisited the statute upheld in Burger as a matter of state constitutional law.  The court in Keta struck down the statute holding that, under article I, § 12 of the New York State Constitution, there is no exception to the warrant and probable cause requirements where an administrative search is "undertaken solely to uncover evidence of criminality and the underlying regulatory scheme is in reality, designed simply to give the police an expedient means of enforcing penal sanctions." Id. at 498 (internal quotation marks omitted).  We Buy does not raise any claims under state law in the complaint, but instead appears to argue that because New York state law precludes pretextual use of administrative searches, plaintiff's Fourth Amendment rights were violated when the police examined the records.

This argument presents an interesting question of whether state law that is more protective of privacy rights than federal law creates a reasonable expectation of privacy under the Fourth Amendment that is expanded to match the state standard.  In other words, can a citizen of New York reasonably rely on law enforcement officers following the more protective New York law, and thus reasonably expect a higher level of privacy under the conception of the Fourth Amendment that the Supreme Court set forth in Katz?  Though the question was not presented in these exact terms, it appears that the Second Circuit has answered in the negative.

In a line of cases starting with United States v. Pforzheimer, 826 F.2d 200 (2d Cir. 1987), the Second Circuit has consistently held that federal courts must apply the exclusionary rule

under federal law in federal prosecutions, even if evidence was gathered by state officials in violation of state constitutional law and would be excluded in a state prosecution. Id. at 203-04; accord, e.g., United States v. Workman, 80 F.3d 688, 694-95 (2d Cir. 1996); United States v. Brown, 52 F.3d 415, 420 (2d Cir. 1995), cert. denied, 516 U.S. 1068 (1996); United States v. Smith, 9 F.3d 1007, 1014 (2d Cir. 1993); see also United States v. Hogan, 122 F.Supp.2d 358 (E.D.N.Y. 2000).[5]  The court in Pforzheimer decided that federal law applied in a federal prosecution, rejecting arguments, based on principles of comity and a desire to avoid forum shopping, that evidence obtained solely by state agents in violation of state law should be excluded.  826 F.2d at 203-04.  The court did not address the argument that the substantive protections of the Fourth Amendment are expanded because more protective state law creates a reasonable expectation of greater privacy, however the consistent holdings of the Second Circuit since that case seem to undermine plaintiff's line of reasoning.  Because evidence obtained in searches that violate state constitutional law has been regularly admitted in federal prosecutions, We Buy cannot reasonably claim an expanded expectation of privacy based on state law.  Even if We Buy could show that the Pforzheimer line of cases were wrongly decided, their consistent application precludes this Court from recognizing an expanded expectation of privacy under the Fourth Amendment based on more protective state law.[6]  This Court, therefore, need not decide whether the inspection of We Buy's records was a violation of New York state constitutional law under Keta.

---

[5] In United States v. Sotomayor, 592 F.2d 1219, 1225 (2d Cir. 1979), cert. denied, 442 U.S. 919 (1979),  the Second Circuit implied in dicta that more protective state law should be applied in a federal case when it pertains to individual privacy rights as opposed to procedural rules.  See also United States v. Lilla, 699 F.2d 99, 102 & n.3 (2d Cir. 1983) (implying that if state law had been more protective federal court would have to apply it).  The Second Circuit rejected the reasoning in these cases in United States v. Workman, 80 F.3d 688, 695 n.4 (2d Cir. 1996), and reaffirmed the approach taken in Pforzheimer.

[6] This, of course, highlights the difficulty with the Katz "reasonable expectation of privacy" line of inquiry, but it is the law and this Court is bound by it.

B.  Warrantless Seizure of Bracelet

The second constitutional violation that plaintiff alleges is the warrantless seizure of the bracelet on Monday, February 27.  Defendants argue that the seizure falls under an exception to the warrant requirement, either for plain view or for consent.  See Horton v. California, 496 U.S. 128 (1990); Schneckloth v. Bustamonte, 412 U.S. 218, (1973).  Plaintiff claims that the bracelet was never placed in plain view, and that We Buy's consent to produce and hand over the bracelet was involuntary.

*1. Plain View Exception to Warrant Requirement*

Defendants' claim that the seizure of the bracelet was valid under the plain view exception to the warrant requirement depends on their assertion that Santiago placed the bracelet in plain view on the counter when they returned to the store on Monday.  (See Def. Br. at 3, 8-9.) Plaintiff, however, asserts that the bracelet remained in the safe and out of view until Dambrot directed Santiago to turn it over after the police threatened to arrest Santiago.  (See Santiago Dep. at 73-74, June 8, 2006.)  This dispute creates a material issue of fact, and therefore defendants are not entitled to summary judgment on the theory that the officers' action on Monday was justified as a plain view seizure.  Likewise, even though it is undisputed that Santiago placed the bracelet in plain view after Dambrot instructed Santiago to "hand it over," the validity of the seizure at that point depends on the validity of We Buy's consent to produce the bracelet.

*2.  Consent Exception to Warrant Requirement*

Defendants also argue that the warrantless seizure did not violate We Buy's constitutional rights because Santiago and Dambrot consented to produce and turn over the bracelet.  We Buy argues that their consent was not voluntary because it was given only after the police threatened to obtain a warrant, shut the store down, and arrest Santiago.

Consent can provide an exception to the warrant requirement if it is voluntarily given.  Schneckloth v. Bustamonte, 412 U.S. 218, 222 (1973).  The government bears the burden of proving that consent was "freely and voluntarily given" when it seeks to rely on consent to justify the lawfulness of a search.  Bumper v. North Carolina, 391 U.S. 543, 548 (1968).  "The question of whether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances."[7]  Bustamonte, 412 U.S. at 227.  This is inherently a fact-based and context-specific inquiry, as a court must consider all of the surrounding circumstances, not rely only on a single "per se" factor.  See United States v. Bye, 919 F.2d 6 (2d Cir. 1990).

The law in this circuit is fairly clear that if "in fact there were grounds for the issuance of a search warrant," then "the well founded advice of a law enforcement agent that, absent a consent to search, a warrant can be obtained does not constitute coercion" or vitiate consent.  United States v. Faruolo, 506 F.2d 490, 494-95 (2d Cir. 1974).  Plaintiff does not contend, nor could they, that the police did not have probable cause to seize the bracelet as stolen property after it had been identified in the photograph shown to the victim.  Likewise, the police were within their rights to "secure" the premises while the warrant application was pending, see id. at 494 (citing United States v. Kohn, 495 F.2d 763 (2d Cir. 1974) (per curiam)); see also Segura v.

---

[7] The analysis for seizures on consent basically tracks the analysis of the more well-developed area of consent searches.  See, e.g., United States v. Baro, 15 F.3d 563 (6th Cir. 1994).

13

United States, 468 U.S. 796, 798 (1984) (officers who, with probable cause, "secured the premises" for nineteen hours to preserve status quo pending issuance of search warrant did not violate Fourth Amendment); id. at 824 n.15 (Stevens, J., dissenting) ("I assume impoundment would be permissible even absent exigent circumstance when it occurs 'from the outside'—when the authorities merely seal off the premises pending the issuance of a warrant but do not enter."); Illinois v. McArthur, 531 U.S. 326, 331-34 (2001) (finding no Fourth Amendment violation when police prevented defendant from entering his home alone pending issuance of search warrant).  Therefore the threat to not let anyone enter or leave the store in the interim to prevent the loss of small portable object does not, by itself, vitiate consent.

The threat to arrest Santiago for possession of stolen property presents a more difficult issue:  Can the police obtain valid consent to seize, without a warrant, property that they have probable cause to believe is stolen by threatening to arrest the possessor (with probable cause to do so[8]) for possession of stolen property if he does not consent?  While defendants are correct to point out that a threat of arrest is not per se coercion, the authorities are divided and there is no controlling precedent in this circuit directly on point.

Defendants point to United States v. Tutino, 883 F.2d 1125,1137-38 (2d Cir. 1989) in which the defendant was arrested on drug charges and given Miranda warnings.  FBI agents informed him that they had received authorization to arrest his girlfriend after they found marked money related to a drug deal in her purse and asked him "why he wanted to get this woman involved in his narcotics business."  Id. at 1137.  The agents also informed him of the evidence

---

[8] Defendants argue, and plaintiff does not contest, that the police had probable cause to arrest Santiago for possession of stolen property under New York Penal Law § 165.40. This is not a case where the police engaged in artifice or made a false claim of lawful authority.  Cf. Bumper v. North Carolina, 391 U.S. 543 (1968).  It is therefore distinguishable from cases where the police threatened arrest without probable cause if consent was not forthcoming.  See, e.g., United States v. Bolin, 514 F.2d 544, 559-60 & n.5 (7th Cir. 1975) (consent to search was coerced where police, without probable cause, threatened to arrest defendant's girlfriend).

against him including that a coconspirator was cooperating.  Tutino then confessed.  The Second Circuit found that the agents conduct was not inherently coercive.  "Once Tutino had been advised of his rights the agents were free to discuss with him the evidence against him and the reasons why he should cooperate."  Id. at 1138.   Under the circumstances, Tutino's confession was voluntary.

The Seventh Circuit confronted a similar scenario in United States v. Miller, 450 F.3d 270 (7th Cir. 2006) where police told a suspect that if he did not confess and cooperate, they would arrest him and his girlfriend and their child would be placed in foster care.  The court held that because the police had probable cause to arrest them both, the fact that the police informed Miller that they would do so if he did not cooperate was not unduly coercive.  The police were merely informing him of what they were legally entitled to, and would, do if he chose to exercise his constitutional right to remain silent.  Id. at 272-73.  Judge Easterbrook could not see how providing a suspect with full information about his options and their consequences could harm him or make his choice among those options involuntary.  Id.

The Sixth Circuit took a different approach in United States v. Ivy, 165 F.3d 397 (6th Cir. 1998).  In that case, Ivy allowed the police into his house where they found drugs in plain view. The police gave all of the occupants Miranda warnings and then sought consent to search the house.  When consent was not forthcoming, the police threatened to arrest Ivy and his girlfriend and take their small child into protective custody if they did not consent to the search.  Id. at 403-04.  Their attempt to get Ivy to sign a consent form lasted for an hour and a half, during which time Ivy's girlfriend was shackled by her leg to a kitchen table while she tried to care for the child.  Id.  Finally Ivy relented and signed the consent form.  The court held that Ivy's will was overborne and his consent was not voluntary.  Id.  Although the police may have had probable

cause to arrest Ivy's girlfriend, considering all of the circumstances, their statements "were not merely informative, but were specifically calculated to induce fear and apply pressure."  Id. at 403.

What stands out about these cases is that the courts conducted a very fact specific inquiry into all of the circumstances and did not allow their decisions to rest on a per se rule.  This is consistent with the Second Circuit's holding in Bye, and is an approach that this Court must follow.  Unlike the defendants in Tutino and Miller, Santiago was not the target of the investigation.  The police in the instant case sought the bracelet as evidence against a suspected burglar.  While the police may have been within their rights to arrest Santiago on probable cause that he possessed stole property, cf. Atwater v. City of Lago Vista, 532 U.S. 318, 354 (2001) (upholding full custodial arrest on probable cause for minor traffic violation punishable only by fine); Whren v. United States, 517 U.S. 806 (1996) (upholding pretextual stop on probable cause for minor traffic violation regardless of whether "reasonable officer" would have made the stop solely to enforce traffic laws), it would not have furthered their goal of investigating the burglaries.  They could not have searched that safe as incident to arrest, see Chimel v. California, 395 U.S. 752, 763 (1969) (search incident to arrest limited to suspect's grab area), and the bracelet would have remained there until they obtained a warrant.  As in Ivy, a jury could find that, under the circumstances, the police were not merely providing Santiago and Dambrot with information on which to base their decision, but attempting to overcome their resolution not to consent.  See Ivy, 165 F.3d at 403.  Moreover, a jury could find that the number of police present—eight to ten in a small store and on a routine matter—helped create a coercive environment.  Several courts have held that the presence of a large number of officers, while not per se coercive, can, in tandem with other factors, contribute to a finding that consent was

involuntary.  See, e.g., United States v. Jones, 641 F.2d 425, 429 (6th Cir. 1981); United States v. Marshall, 488 F.2d 1169, 1188-89 (9th Cir. 1973); see also 3 Wayne R. LaFave, Search and Seizure § 8.2(b) (3d ed. 1996).

The burden is on the government to prove that consent was voluntary.  Bumper, 391 U.S. at 548.  Considering the totality of the circumstances and taking the facts in the light most favorable to the plaintiff, a reasonable jury could find that the government failed to meet that burden.  Summary judgment is not appropriate on the issue of whether the police conduct on Monday violated plaintiff's constitutional rights.

III

Defendants argue that even if there were constitutional violations, the case must be dismissed because the individual officers, Detective Lorence and Police Chief Noonan, are protected by qualified immunity and the municipal defendants not cannot be held liable unless the violation was pursuant to a local policy or custom.

A.  Qualified Immunity

Individual police officers are protected by qualified immunity from suit for damages under § 1983.  "The doctrine of qualified immunity shields public officials performing discretionary functions from civil liability 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Bradway v. Gonzales, 26 F.3d 313, 317 (2d Cir. 1994) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  Once a court has determined that the facts alleged, taken in the light most favorable to the plaintiff, can establish a constitutional violation, the next inquiry is whether the

right was clearly established at the time of the violation.  See Saucier v. Katz, 533 U.S. 194, 201 (2001).  To be clearly established, the "contours of the right must be sufficiently clear that a reasonable officer would understand that what he is doing violates the right."  Anderson v. Creighton, 483 U.S. 635, 640 (1987); see also Luna v. Pico, 356 F.3d 481, 490 (2d Cir. 2004) ("[E]ven assuming a state official violates a plaintiff's constitutional rights, the official is protected nonetheless if he objectively and reasonably believed that he was acting lawfully.").  A right can be clearly established even in the absence of a Supreme Court holding on a "fundamentally similar" set of facts so long as previously existing law is sufficient to give the officer "fair warning" that his conduct is unlawful.  Hope v. Pelzer, 536 U.S. 730, 739-40 (2002) ("[O]fficials can still be on notice that their conduct violates established law even in novel fact circumstances").  Disparate decisions among the lower courts and other persuasive authorities, however, cut against a finding that a right was clearly established.  See Wilson v. Layne, 526 U.S. 603, 617 (1999) ("If judges…disagree on a constitutional question, it is unfair to subject police to money damages for picking the losing side of the controversy.").

### 1. *Warrantless Search of Records*

Because, even taking the facts to be as alleged by plaintiff, the police did not commit any constitutional violation in their warrantless search of We Buy's records, this Court need not inquire further into the qualified immunity of Detective Lorence and Police Chief Noonan for their actions relating to Friday, February 24, 2006.  See Saucier, 533 U.S. at 201 ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.").

Even if the Court were to find that conduct that would otherwise be a valid administrative search violates the Constitution if done as a pretext for a criminal investigation, the tension between such an approach (like the approach the Tenth Circuit took in United States v. Johnson) and the Supreme Court's holding in New York v. Burger would preclude a finding that such a rule was clearly established.

This Court also need not address whether the search on Friday violated clearly established state law.  The Supreme Court held in Davis v. Scherer, 468 U.S. 183, 194-95 (1984) that an officer's violation of clearly established state law is not enough to overcome qualified immunity in a § 1983 suit.  To overcome qualified immunity the plaintiff must show that the very law whose violation forms the basis of the federal action was clearly established.  Id. at 194-95 & n.12.


 *2. Warrantless Seizure of the Bracelet*

Defendants argue that the individual officers cannot be held personally liable for the warrantless seizure of the bracelet because their actions on Monday, February 27, 2006 did not violate clearly established law.  There is no question that it is clearly established that, for consent to justify a warrantless seizure, that consent must be voluntary.  See Schneckloth v. Bustamonte, 412 U.S. 218, 222 (1973).  The inquiry into whether a right is clearly established, however, must be conducted at the correct level of generality.  See Anderson, 483 U.S. at 639.  The question, then, is whether it was objectively reasonable, in light of existing law, for Lorence to believe that the officers could obtain valid consent to seize the bracelet by threatening to arrest Santiago for possession of stolen property when they had probable cause to do so.

Lorence could reasonably have believed that all of the police actions on Monday were lawful. The law is fairly clear that the officers' threat to obtain a search warrant, when they had probable cause to do so, does not vitiate Santiago and Dambrot's consent. Nor does the presence of eight to ten officers, without more, create an environment that is so coercive that consent cannot be voluntarily obtained.

Authorities are split on whether the police can obtain valid consent by threatening a lawful arrest, and there is no controlling Supreme Court or Second Circuit precedent. Therefore this Court cannot say that the rule in Ivy is clearly established. Lorence cannot be held liable for failing to predict the direction of the law, especially when cases like Tutino and Miller have held consent valid when obtained on threat of lawful arrest. Lorence could reasonably have believed that he could obtain valid consent to seize the bracelet by threatening to arrest Santiago when he had probable cause to do so.

It is true that the voluntariness of Santiago and Dambrot's consent under the totality of the circumstances is ultimately a question of fact for the factfinder and the rule that consent must be voluntary to be valid is clearly established. See Bustamonte, 412 U.S. at 227. The issue of qualified immunity, however, is a question of law that is appropriately determined on summary judgment. See Harlow, 457 U.S. 818-19 (adopting objective standard to facilitate determination of qualified immunity as a question of law on summary judgment). The question of whether the police conduct was objectively reasonable under clearly established law is distinct from the question of whether consent was voluntary under the totality of the circumstances. Cf. Anderson, 483 U.S. at 641 (highlighting distinction between reasonableness inquiry under the Fourth Amendment and reasonableness inquiry for purposes of qualified immunity). It is possible for the factfinder to determine that the totality of the circumstances overbore Santiago

and Dambrot's will not to consent, and for Lorence to have reasonably believed at the time that his actions were lawful.  Because none of the police actions taken alone violated clearly established law, it was within the bounds of reasonableness for Lorence to believe that under the totality of the circumstances We Buy's consent was voluntary, even if a factfinder might ultimately determine otherwise.

Because Detective Lorence did not violate clearly established law on either Friday or Monday, he is protected by qualified immunity and entitled to summary judgment on the § 1983 claim.  Plaintiff has not proffered any evidence that the other individual defendant, Police Chief Noonan, has violated any of plaintiff's clearly established rights that would give rise to liability under § 1983.  Therefore Noonan, too, is protected by qualified immunity and is entitled to summary judgment in his favor.  See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986) ("[N]onmoving party [who] will bear the burden of proof at trial…[must] go beyond the pleadings…and designate specific facts showing that there is a genuine issue for trial.").


B.  Municipal Liability

Defendants argue that the municipal defendant, the Town of Clarkstown, cannot be held liable under § 1983 because any constitutional violations that might have occurred were not a result of the municipality's official policy or custom.  Defendants also argue that the Town of Clarkstown Police Department is not an entity capable of being sued.  Plaintiffs contend that summary judgment is not appropriate because they have not yet had sufficient discovery relating to the municipal defendants.

*1. Town of Clarkstown*

In <u>Monell v. Department of Social Services</u>, 436 U.S. 658, 690 (1978), the Supreme Court held that municipalities could be held liable for constitutional violations under § 1983. The Court went on to say, however, that a municipality could not be held liable on a theory of respondeat superior—that is, solely because it employs a tortfeasor.  <u>Id.</u> at 691.  Rather, the municipality would only be liable under § 1983 if the constitutional violation was the result of an official policy or custom.  <u>Id.</u> at 694; <u>Zahra v. Town of Southold</u>, 48 F.3d 674, 685 (2d Cir. 1995).  The official policy or custom requirement is intended to distinguish acts of the municipality from the acts of its employees.  <u>See</u> <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469, 479-80 (1986) (plurality opinion).  "[M]unicipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question."  <u>Id.</u> at 483.  Whether a particular official has "final policymaking authority" is a question of state law.  <u>City of St. Louis v. Praprotnik</u>, 485 U.S. 112, 123 (1988) (plurality opinion); <u>Jett v. Dallas Indep. Sch. Dist.</u>, 491 U.S. 701, 737 (1989).

Defendants argue that the Town of Clarkstown cannot be held liable for the discretionary acts of police officers because individual police officers are not policymakers under state and local law.  They point to <u>Polite v. Town of Clarkstown</u>, 120 F. Supp. 2d 381, 385 (S.D.N.Y. 2000) where this Court held, in a case involving the same town, that "state and local law clearly establish that the Town Board and Police Commission are the final policymaking officials with regard to the establishment of any rules and regulations pertaining to police conduct."[9]

---

[9] Subsequent to the decision in <u>Polite</u> and prior to any time relevant to this case, the Police Commission was abolished pursuant to N.Y. Town Law § 150 (McKinney 1989 & Supp.), leaving the Town Board as the sole policymaking authority in Clarkstown.

Plaintiff, however, does not rely on the claim that the individual police officers were final policymaking officials.  Rather, plaintiff argues that Clarkstown has a policy or custom established by the police chief or Town Board.  We Buy argues that Lorence's comment that "Clarkstown doesn't use or need warrants and that they make numerous seizures during investigations based on identifications by victims" (Dambrot Aff. ¶ 5), is evidence of a town policy or custom.

Defendants are correct to point to Second Circuit precedent holding that mere assertions that a municipality has a policy or custom are "insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference," Dwares v. City of New York, 985 F.2d 94, 100 (2d Cir. 1993) (citing Batista v. Rodriguez, 702 F.2d 393, 397 (2d Cir. 1983)), and that "a single incident alleged in a complaint, especially if it involved only actors below the policymaking level, generally will not suffice to raise an inference of the existence of a custom or policy.  Id.; see also Ricciuti v. New York City Transit Auth., 941 F.2d 119, 123 (2d Cir. 1991).  Plaintiff however, claims that it has not had an opportunity to make full discovery on the issue of Clarkstown's policy and custom.  (See Pl.'s Br. at 15.)

Rule 56(f) of the Federal Rules of Civil Procedure "allows a summary judgment motion to be denied, or the hearing on the motion to be continued, if the nonmoving party has not had an opportunity to make full discovery."[10]  Celotex, 477 U.S. at 326.  Because plaintiff has alleged a policy or custom and presented some evidence to support its allegation in the form of Lorence's statement, this Court thinks it inappropriate to grant summary judgment in favor of the Town of

---

[10] Rule 56(f) provides:

> Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Clarkstown before the plaintiff has had an opportunity to conduct discovery into the existence of a custom or policy.

### 2. *Town of Clarkstown Police Department*

The claim against the Town of Clarkstown Police Department must be dismissed because the Police Department is not an entity capable of being sued.  Polite v. Town of Clarkstown, 60 F. Supp. 2d 214 (S.D.N.Y. 1999); Hoisington v. County of Sullivan, 55 F. Supp. 2d 212, 214 (S.D.N.Y 1999) ("Under New York law, a department of a municipal entity is merely a subdivision of the municipality and has no separate legal existence.").

### IV

For the reasons stated above, the defendants' motion for summary judgment is granted in part and denied in part.  Summary judgment is granted in favor of defendants Lorence and Noonan as to all claims because they are shielded from liability under § 1983 by qualified immunity.  Summary judgment is granted in favor of the Town of Clarkstown Police Department as to all claims because it is not an entity amenable to suit.  Summary judgment is granted in favor of the Town of Clarkstown as to the warrantless search of We Buy's records on Friday, February 24, 2006 because plaintiff has failed to make out a constitutional violation.  Summary judgment is denied for the Town of Clarkstown as to the warrantless seizure of the bracelet on Monday, February 27, 2006 pending discovery on the issue of the Town's policies or customs.

This denial is without prejudice to the defendant's reapplication for summary judgment at the completion of discovery.  Plaintiff and Town counsel shall submit a proposed discovery schedule to the Court by December 1, 2006.

**SO ORDERED.**

Dated: October 20, 2006
New York, NY

_____
U.S.D.J.